## H. HESTER V. THE STATE.

No. 17148.   Delivered January 16, 1935.
Appeal Reinstated February 13, 1935.

The opinion states the case.

*H. L. Carpenter,* of Greenville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of property over the value of $50.00; the punishment, confinement in the penitentiary for three years.

There appears in the record a purported appeal bond. It bears no date, but shows that it was approved by the sheriff on the 5th day of May, 1934, that being the date of the adjournment of the trial term. The bond is not approved by the trial judge. Art. 818, C. C. P., expressly requires that before a bail bond shall be accepted and the defendant released from custody the same must be approved by the sheriff and the court trying the case, or his successor in office. The bond being defective, this court is without jurisdiction and the appeal must be dismissed.

Appellant is granted fifteen days from this date in which to perfect his appeal.

The appeal is dismissed.

*Dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—At a former time we declined to grant appellant's motion for rehearing and to let him file an appeal bond tendered in lieu of a defective recognizance theretofore appearing in this record, and by reason of which this appeal had been dismissed. It is now made to appear that in fact a proper appeal bond was filed by this appellant within fifteen days after his appeal was originally dismissed, and that the clerk of the trial court made an error in the transcription thereof, causing apparently a defective appeal bond to be filed in this court, which led us to overrule appellant's motion for rehearing. Because of the fact that it is now shown that a proper appeal bond was in fact on file, our opinion overruling appellant's motion for rehearing is withdrawn, and the case now considered on its merits.

It will not be necessary for us to discuss the facts, which seem to show that three young men, one of them appellant, were charged with taking four bales of cotton. It is in evidence that the cotton was sold the morning after it was taken and the proceeds divided. Thereafter and during the same day it was discovered that two of the young men were implicated and they were arrested, and made statements concerning their guilt and that of this appellant. These two young men were used as State witnesses upon the trial. Their testimony was necessarily that of accomplices, and was so treated in the charge of the court.

By bill of exceptions "B" it appears that appellant did not testify as a witness, and that no reference to his failure to so testify was made by defendant's counsel in his argument, but in the closing argument of the district attorney he used the following language in substance: "Now I am going into the facts of this case, and I am not going to discuss the failure of the defendant to testify, either, in this case." To the use of this language appellant reserved an exception, and requested a special charge instructing the jury not to consider said state-

54

ment of the State's attorney. It appears that the court made certain notations on the back of said requested charge, as reasons for declining to give same. The court affirms that the attorney for the State made the argument referred to, but seems to be of opinion that same is not error because of the fact that said attorney made a statement as follows: "That he was not going to refer to the failure of the defendant to testify,' and also asked the question: 'Where is the witness who took that stand who said the defendant did not go down there that night about 1 o'clock to get that cotton;' and also that the two accomplices witnesses had told straight forward stories about the theft of that cotton." There seems no question but that the argument of the State's attorney was an allusion to the failure and refusal of the defendant to testify, such as is forbidden by statute. In Wilcock v. State, 141 S. W., 88, it appears that the State's attorney made the following remark; "Defendant's defense in this case is—although he has offered no testimony to that effect, I do not mean to refer to his failure to testify." Upon objection to this as an allusion to the failure of defendant to testify, the trial court informed the State's attorney that he should not so allude to such failure, whereupon the State's attorney replied: "I have not referred to defendant's failure to testify. On the contrary, I said to the jury that I did not so mean to refer to that fact." This court said in its opinion: "The expression 'I did not mean to refer to his failure to testify' clearly and unequivocally refers to the fact that defendant did not testify." It is difficult for us to conceive how any other construction could be put upon what occurred in the instant case than that it was an allusion to the failure of defendant to testify. To hold otherwise would put it within the power of any attorney, by simply putting some form of negative in his statement, to refer as often as he pleased, in this manner, to the failure of the defendant to testify, and thereby call the attention of the jury to it with impunity. The bill of exceptions manifests error. In this connection we do not find anything in the cross-examination of the accomplice witnesses by appellant's attorney, which drew out any testimony warranting such argument.

It is shown by a number of bills of exception that statements made by the two accomplices, after the money derived from the sale of the stolen cotton had been divided among the three takers,—but made during the same day, out of the presence of this appellant,—were introduced in evidence against him

over his objection. One of these bills is qualified at length, and the court approves the other bills presenting the same complaint by referring to his qualification upon the bill above referred to. Bill of exceptions No. 15, being the bill to which is appended the qualification in full, presents objection to the testimony of Mr. Denny, who swore that he arrested the other two boys, Green and Holbert, on the day of the alleged theft,—as is set out in the bill,—after the money derived from the sale of the stolen cotton had been divided, and also out of the presence of this appellant, and that said two young men made statements to the officers and gave back to them the money derived from the sale of the cotton, and gave them a written statement setting out the matter in full. The court's qualification sets out that he proceeded on the theory that said three young men were co-conspirators, and that he admitted in evidence the declarations of Green and Holbert concerning the actions and movements of all three of them, viz: Green, Holbert and appellant, for the reason that at the time they made the statements and declarations to the officer, the conspiracy had not terminated. It very plainly appears from the court's qualification that because the young men, implicated with appellant, stated that at the time they divided the money with appellant the three of them then agreed to spend that night at a tourist camp in Greenville, but did not do so because during said day they were arrested, it was the court's conclusion that the termination of the conspiracy would have been their spending the night together at said tourist camp. We can not agree with the soundness of such holding. At the time these three young men conspired to steal this cotton, if they did, it is not claimed that there was then any agreement that they should spend the night at a tourist camp the next day, nor do we see how in fact such agreement, if made, could have been considered as in furtherance of or pursuant to the purpose of the conspiracy, which was to steal the cotton, sell same and divide the proceeds. Beyond question, any act or statement done or made prior to the time the money was divided, which was in furtherance of or pursuant to said conspiracy, would be admissible, but the fact that when they divided the money they then agreed they would go somewhere and spend the night, does not, as far as this court can see, amount to any statement affecting the theft of the cotton, or the appropriation of the proceeds of the sale of same. We are constrained to believe the learned trial judge fell into error in his conclusion. Substantially the same objections and the same ruling appear in bills of exception 16,

19, 31, 32 and 35, each of which bills of exception reflects reversible error.

We see no need for discussing the other matters complained of as they will probably not occur upon another trial, if there be one.

For the errors mentioned the judgment will be reversed and the cause remanded.

*Reversed and remanded.*